UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Direct Benefits, an Alera Group Agency, LLC, | Civ. No. 24-252 (PAM/DLM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| Delta Dental of Minnesota, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, the Motion is granted.

## BACKGROUND

In 2004, Defendant Delta Dental of Minnesota and non-party DBI, Inc., entered into agreements to market and sell a new type of "private-label" dental plans, for small employers or groups of between 2 to 99 plan participants. (See Compl. (Docket No. 1) ¶ 9.) These plans were called Pathfinder Dental. (Id. ¶ 11.) Plaintiff Direct Benefits, an Alera Group Agency, LLC, acquired "substantially all of the business and operational assets of DBI" in April 2021. (Id. ¶ 37.) Direct Benefits brings this lawsuit in the shoes of DBI.

As described more fully below, the parties' relationship eventually soured, and Direct Benefits brought this lawsuit. The gravamen of the Complaint for purposes of the instant Motion is that DBI and not Delta Dental owned the trademark in the name "Pathfinder."

The parties' written agreements do not explicitly address any trademark rights in the Pathfinder name, however. The agreements at issue—the Override Operating Agreement[1] and the Managing Agent Dental Commission Agreement Pathfinder Product—provided that DBI was the "exclusive distributor" for the Pathfinder plans in certain geographic areas. (Id. ¶¶ 13, 19, 21.) Delta Dental's role was to underwrite, collect premiums for, and administer the Pathfinder plans that DBI or its sub-agents sold to customers. (Id. ¶ 12.) And while DBI was the exclusive distributor for Pathfinder plans, the Override Agreement gave Delta Dental the right to change that arrangement, providing that DBI's "ability to retain exclusive distribution of the Pathfinder Dental Plan will be reviewed on an annual basis. [Delta Dental] does reserve the right to change exclusivity agreement at any time." (Id. ¶ 20.)

Direct Benefits contends that the written agreements "did not fully set out all terms of the parties' agreement" (id. ¶ 22), but does not allege any specific course of dealing or oral agreement that ostensibly gave Direct Benefits rights to the Pathfinder trademark. Rather, according to the Complaint, DBI "developed the foundational concept and design for" the Pathfinder plans. (Id. ¶ 10.) The Complaint also outlines DBI's expenditure of "extraordinary time, money, and effort" in service of the Pathfinder mark. (Id. ¶ 24.) But Direct Benefits stops short of alleging that it had a hand in naming the plan, instead asserting that, after a DBI executive "consulted with Delta Dental representatives regarding

---

[1] The parties' Override Agreement was revised in 2006 and 2014. (Compl. ¶ 19.) The provision relevant for this discussion was the same in each version of the Override Agreement.

2

options for branding the plan[,] . . . the name chosen was "PATHFINDER DENTAL." (Id. ¶ 11.) Direct Benefits also alleges that "[DBI's] assets became the property of Direct Benefits, including . . . its rights to the 'Pathfinder' mark" in the acquisition. (Id. ¶ 37.) But this allegation, which is the only allegation that specifically references a putative trademark in the "Pathfinder" name, also stops short of saying that DBI owned the Pathfinder mark, merely pleading that Direct Benefits acquired whatever rights DBI had in the Pathfinder mark.

Despite a provision prohibiting any assignment of the Managing Agent Agreement "without written approval of DELTA DENTAL," Delta Dental did not object to Direct Benefits' acquisition of DBI. (Id. ¶ 38; Richie Decl. Ex. 1 (Docket No. 18-1).) Delta Dental instead continued to pay the commission and bonus payments due under the agreements to Direct Benefits and generally worked cooperatively with Direct Benefits for more than a year. (Compl. ¶¶ 40, 42.)

In June 2022, however, Delta Dental informed Direct Benefits that a new managing agent agreement with Direct Benefits would be necessary, and threatened to withhold certain payments pending that new agreement. (Id. ¶ 44.) According to Direct Benefits, Delta Dental "took the untenable position that 'Pathfinder' is a Delta Dental product" and that it would not pay Direct Benefits if the parties could not agree on a new contract. (Id. ¶ 45.) Delta Dental stopped paying Direct Benefits commissions on Pathfinder products in May 2023 and thereafter refused to recognize the independent sub-agents DBI had recruited and long used to sell the Pathfinder plans. (Id. ¶¶ 48, 50.) This lawsuit followed.

3

The Complaint raises nine counts: breach of contract (Count I), tortious interference with business expectancy (Count II), declaratory relief (Count III), common-law trademark infringement (Count IV), Lanham Act false designation of origin (Count V), equitable and promissory estoppel (Count VI), unjust enrichment (Count VII), accounting (Count VIII), and injunctive relief (Count IX). Delta Dental seeks dismissal of the Lanham Act claim, contending that if that claim is dismissed, there is no federal jurisdiction, and the remainder of the case must be dismissed without prejudice.

**DISCUSSION**

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in Jackson's favor. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Delta Dental seeks dismissal of the Lanham Act claim, arguing that Direct Benefits' allegations, together with the parties' agreements—which are matters "necessarily embraced by the pleadings," Zean v. Fairview Health Services, 858 F.3d 520, 526 (8th Cir. 2017)—do not establish that Direct Benefits owns the "Pathfinder" mark. Delta Dental asserts that if the Lanham Act claim is dismissed, the remaining claims should be dismissed

4

for lack of jurisdiction. In the alternative, Delta Dental contends that those claims, too, fail to state claims on which relief can be granted and should be dismissed on that basis.

A.     **Declaratory and Injunctive Relief**

Although Delta Dental does not argue for dismissal of Direct Benefits' declaratory relief and injunctive relief claims, those claims must nevertheless be dismissed. A claim for declaratory or injunctive relief is not an independent cause of action but is rather a request for relief. See Eggenberger v. W. Albany Twp., 90 F. Supp. 3d 860, 863 (D. Minn. 2015) (discussing proposition that Minnesota's declaratory judgment act does not "create a cause of action that does not otherwise exist" and that the "party seeking a declaratory judgment must have an independent, underlying cause of action based on a common-law or statutory right") (quotations omitted); Christensen v. PennyMac Loan Servs., LLC, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013) (finding that a "claim for injunctive relief is a request for a remedy, not a separate cause of action"). As such, the "claims" for declaratory and injunctive relief (Counts III and IX) must be dismissed, although this dismissal does not preclude Direct Benefits from seeking appropriate equitable relief through its substantive claims.

B.     **Lanham Act**

The question in this Motion is not whether Direct Benefits has plausibly pled the elements of a claim under the Lanham Act, but whether Direct Benefits has plausibly alleged that DBI and not Delta Dental owned the trademark in "Pathfinder." Ownership of a mark is self-evidently a prerequisite to a claim that another infringed that mark in violation of the Lanham Act. See 15 U.S.C. § 1125(a) (allowing a person "likely to be

5

damaged" by another's use of a mark to bring a civil action alleging, inter alia, false designation of origin). Direct Benefits argues that the allegations in the Complaint should be the end of the matter, and that the Court must accept as true the allegation that DBI owned the mark. Direct Benefits does not dispute, however, that the parties' written agreements, liberally quoted in the Complaint, are documents "necessarily embraced by" the Complaint and that the Court may consider those documents when evaluating the plausibility of the Complaint's allegations. Delta Dental asserts that these agreements demonstrate that Direct Benefits' allegations are not plausible.

The Override Agreement provides that Delta Dental could change DBI's exclusive-distribution rights in the Pathfinder plans "at any time." (Compl. ¶ 20.) Delta Dental argues that this authority is evidence of itself that Delta Dental owned the Pathfinder mark, because a trademark is essentially "the acquisition of the right to exclude others from the use of [that] trademark." Minnesota Mining & Mfg. Co. v. Shurtape Techs. Inc., No. 98cv2134 (MJD/JGL), 2002 WL 1000089, at *1 (D. Minn. Mar. 14, 2002) (Davis, J.) (quotation omitted). Because Delta Dental and not DBI had the right to exclude others from marketing Pathfinder products, the argument goes, Delta Dental must have owned the trademark.

Direct Benefits contends that it owned the Pathfinder mark by virtue of DBI's "continuous use of that mark in commerce since 2004 to identify [DBI] as the exclusive seller of the dental plans sold under the 'Pathfinder' name." (Docket No. 24 at 12.) But this argument is akin to a local insurance agent asserting ownership over the State Farm Insurance trademark because they are the exclusive State Farm agent for a specified area

and have been selling State Farm policies for many years. Mere use of another's mark does not give rise to ownership of that mark, especially when the mark's owner can discontinue the permission to use the mark at any time.

Direct Benefits' arguments in opposition to Delta Dental's Motion amount to an attempt to plead what the Complaint does not: that DBI owned the Pathfinder mark. But even had the Complaint explicitly pled that DBI owned the mark, that assertion must be plausible in light of the other allegations and the parties' agreements. Because those agreements allowed Delta Dental to revoke DBI's role distributing Pathfinder plans at any time, the only plausible inference is that DBI did not own any rights in the "Pathfinder" name.

The authority on which Direct Benefits relies in opposition to the Motion is not on point. These decisions address whether certain contracts could be license agreements. See Standard Sewing Mach Co. of Ohio v. Jones, 260 F. 170, 172 (3d Cir. 1919) (finding that contracts for the sale of patented machines are not license agreements merely because the subject of the sale was patented); Claiborne-Reno Co. v. E.I. Du Pont de Nemours & Co., 77 F.2d 565, 566 (8th Cir. 1935) (same). There is no need to construe the Override Agreement as a license in order to determine that DBI did not own the "Pathfinder" mark. As Delta Dental argues, the "license" argument is a red herring because the question is not whether the agreements gave DBI a license but whether anything in the agreements supports Direct Benefits' contention that DBI owned the Pathfinder mark. Delta Dental's right to change DBI's exclusivity arrangement at any time gives lie to the argument that DBI owned the mark.

In the case on which Direct Benefits heavily relies, two supplier/distributor agreements involving dairy hygiene products did not explicitly address ownership of any trademarks in the products' names. A&L Lab'ys, Inc. v. Bou-Matic, LLC, No. 02cv4862 (PAM/RLE), 2003 WL 21729977 (D. Minn. July 21, 2003).  But the agreements' provisions were contradictory, in some sections indicating that one party owned the marks, and in others that the other party owned the marks. Id. at *2.  Because "the evidence on the issue of ownership [of the trademarks], including the language of the parties' two agreements, is ambiguous at best," the Court denied competing preliminary injunctions on trademark infringement and likelihood of confusion. Id. at *3.

This decision is likewise not on point.  Direct Benefits points to no contradictory contractual provisions here.  There is only one contractual provision that provides for the parties' rights in the exclusive-distribution arrangement, and that provision is unambiguous:  Delta Dental has the exclusive right to terminate DBI's distribution of the Pathfinder plans at any time.  Without any allegation that DBI had the authority to exclude others from use of the Pathfinder trademark, Direct Benefits' own pleading shows that Delta Dental controlled access to the mark, and Direct Benefits has failed to plausibly state a claim for violation of the Lanham Act.

**C.    State Claims**

Whether to exercise pendent jurisdiction over state claims when federal claims have been dismissed is within the Court's discretion. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  "[T]he usual practice" is to "dismiss[] pendent claims when the federal claims are dismissed before trial." Hassett v. Lemay Bank & Tr. Co., 851 F.2d 1127, 1130

(8th Cir. 1988); see also Gibbs, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The parties offer no reason to vary from the "usual practice" here. The state claims will be dismissed without prejudice, although Direct Benefits should be aware that the determination regarding its Lanham Act claim may be preclusive for any putative state-law trademark claim Direct Benefits might choose to bring. See DaimlerChrysler AG v. Bloom, 315 F.3d 932, 936 n.3 (8th Cir. 2003) (noting that Minnesota "state [trademark] claims are coextensive with the federal [Lanham Act] claims").

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion to Dismiss (Docket No. 14) is **GRANTED**;

2. Plaintiff's claim under the Lanham Act (Count V of the Complaint) and claims for declaratory and injunctive relief (Counts III, IX) are **DISMISSED with prejudice**; and

3. Plaintiff's remaining claims are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   May 9, 2024

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge